J-A02023-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSHUA RAHSAAN ELLIS | : | |
| | : | |
| Appellant | : | No. 1854 MDA 2017 |

Appeal from the Judgment of Sentence August 7, 2017
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0000814-2016

BEFORE:  LAZARUS, J., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY DUBOW, J.:                              **FILED JUNE 07, 2019**

Appellant, Joshua Rahsaan Ellis, appeals from the August 7, 2017 Judgment of Sentence entered in the Lancaster County Court of Common Pleas following his jury conviction of Aggravated Assault and Conspiracy to Commit Aggravated Assault.[1]  In particular, Appellant challenges the discretionary aspects of his sentence and the trial court's evidentiary ruling pertaining to Appellant's alleged gang affiliation.  After careful review, we affirm.

The Commonwealth charged Appellant with the above crimes following a violent altercation in the early morning hours of December 25, 2015, in which Appellant and his co-defendants, Francisco Camacho ("Camacho"),

---

[1] 18 Pa.C.S. §§ 2702(a)(1) and 903, respectively.

Alexander Rodriguez-Cruz ("Cruz"), Anthony Maglietta ("Maglietta"), and Raymond J. Lee, III ("Lee"), violently assaulted the victim, Shaliek Rivera (the "victim"), and left him seriously injured.[2]

The relevant facts, as gleaned from the record, including the Notes of the Testimony, are as follows. Maglietta owned Molly's Pub and Carry-Out, a bar and bottle shop located on the corner of Shippen and Chestnut Streets in Lancaster. Appellant, Lee, and Cruz worked for Maglietta as security guards at Molly's Pub. Just before 1:00 AM on December 25, 2015, Appellant, Cruz, Maglietta, and Lee, were outside of Molly's Pub, when the victim approached the group. The victim greeted Appellant, and Lee approached them.[3] Lee and the victim engaged in a short conversation during which Lee became "animated" and proceeded to strike the victim violently on the head, while Appellant, Maglietta, and Cruz stood behind Lee, watching the assault. The strike immediately rendered the victim unconscious and prone. The victim remained unconscious and convulsing, lying partially in Shippen Street, for approximately 10 minutes. Eventually, the victim regained consciousness,

---

[2] The jury also convicted Cruz, Maglietta, and Lee of the same offenses. They have filed direct appeals of their Judgments of Sentence which are pending at Docket Numbers 1845 MDA 2017; 1869 MDA 2017; and 78 MDA 2018, respectively. On May 12, 2017, co-defendant Camacho entered an open guilty plea to one count of Robbery, 18 Pa.C.S. § 3701(a)(1)(v), at Docket No. CP-36-CR-806-2016, for which the trial court sentenced him on August 10, 2017, to a term of one to five years' incarceration. Camacho did not file a direct appeal from his Judgment of Sentence.

[3] Trial testimony indicated that Appellant and the victim were friends and had been roommates.

stood up, and began to wander around, stumbling. The victim stumbled to a residence next door to Molly's Pub belonging to Maglietta in an attempt to get help. Appellant, Lee, Maglietta, and Cruz proceed to run after the victim.

Lee then grabbed the victim and threw him back to the ground, whereupon he punched and kicked the victim. The victim remained on the ground for an extended period of time, during which someone picked the victim's pockets.

The victim roused himself again and then attempted to enter a nearby vehicle. Lee, in the presence of Appellant, Cruz, and Maglietta, again thwarted the victim's efforts to obtain help and sanctuary, by removing the victim from the vehicle. The men placed the victim over a brick planter next to the Carry-Out and all proceeded to beat, kick, and punch the victim into unconsciousness. When the men finished beating the victim, Lee carried him to an area not far from Molly's Pub and left him there. The victim eventually stumbled back to Molly's Pub and fell down across the street from Molly's Pub. The victim laid there for approximately 20 minutes before Appellant, Cruz, Maglietta, and Lee carried him to a secluded area behind Maglietta's truck. The victim laid there, again unconscious, for approximately another 30 minutes before he regained consciousness, and wandered, disoriented, back across the street. Appellant, Cruz, Maglietta, and Lee refrained from assaulting the victim any further, but they did not provide him with any assistance.

The victim then proceeded to wander to a house on Chestnut Street whereupon the residents inside alerted the police. At first, the police took the victim into custody on suspicion of public drunkenness but then, upon realizing that the victim was seriously injured, called EMS to transport the victim to the hospital as a trauma patient.

The victim sustained serious injuries from the assaults including bleeding, swelling, and bruising of his brain, and a fractured nose. He remained unconscious in the hospital for approximately one week following the attack. The victim also had bone fragments in his ear, which affected his equilibrium and prevented him from moving on his own for two or three months. At the time of trial, he continued to suffer from short-term memory loss and had no recollection of the attack.

Lancaster Police obtained videotaped footage of the incident from Molly's Pub's security cameras and from the Lancaster Community Safety Coalition, a group that has installed security cameras around Lancaster City.[4,5]

_____

[4] One security camera belonging to the Lancaster Community Safety Coalition is located at the intersection of Chestnut and Shippen Street, across from Molly's Pub.

[5] The Commonwealth also charged Maglietta with one count of Tampering with Evidence, 18 Pa.C.S. § 4910(1), in connection with Maglietta's attempt to tamper with and/or conceal the images of the incident recorded by the cameras at Molly's Pub. The jury convicted Maglietta of that charge, but the trial court subsequently granted Maglietta's Motion for Judgment of Acquittal as to that conviction.

A three-day joint jury trial commenced on May 22, 2017. The Commonwealth presented the testimony of Police Officer Herbert Watson, Detective Sergeant John Duby, Sergeant Michael John Gerace, and Sergeant Ronald William Breault, III, all from the Lancaster City Police Department. The victim also testified. In addition, the court admitted videotaped footage of the incident into evidence. Maglietta testified on his own behalf and presented the testimony of one character witness. Lee presented the testimony of a witness to the crime—his son, Jobe Lee. Neither Cruz nor Appellant presented any evidence or testimony.

On May 25, 2017, the jury convicted Appellant of Aggravated Assault and Conspiracy. The trial court ordered a Pre-Sentence Investigation ("PSI") Report and deferred sentencing until its completion.

On August 7, 2017, after consideration of the PSI Report and argument of counsel, the trial court sentenced Appellant to an aggregate term of five to ten years' incarceration, and ordered Appellant to pay $7,786.37 in restitution.[6]

Appellant filed a timely Post-Sentence Motion and Motion for Reconsideration of Sentence in which he challenged the sufficiency and weight of the evidence and the discretionary aspects of his sentence. On November

---

[6] Appellant's sentence was comprised of one five to ten year term of incarceration for his Aggravated Assault conviction—an aggravated range sentence—and one concurrent term of three to six years' incarceration for his Conspiracy conviction. A standard-range guideline sentence for a conviction of Aggravated Assault is 36 to 54 months' incarceration. **See** 204 Pa. Code. § 303.16(a).

9, 2017, the trial court denied Appellant's Post-Sentence Motion and Motion for Reconsideration of Sentence.

This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following two issues on appeal:

1. Did the court err in allowing testimony regarding alleged gang activity[] that was irrelevant and so harmful to require a new trial?

2. Did the court abuse its discretion in sentencing Joshua Ellis to 5 to 10 years of incarceration as the trial court violated the express provisions of the sentencing code?

Appellant's Brief at 9.

In his first issue, Appellant claims the trial court abused its discretion in permitting Sergeant Gerace to testify about "a speculated gang involvement of [] Appellant."[7]  *Id.* at 15.  Appellant characterizes this testimony as irrelevant and inflammatory. *Id.* at 15-16.  In particular, Appellant objects to Sergeant Gerace's testimony that Appellant and Maglietta were together in a photograph in which Appellant was wearing a t-shirt emblazoned with the letters "SMM" and Maglietta was wearing a red-colored shirt.  *Id.* at 15. Sergeant Gerace testified that "SMM" stands for "Sex Money Murder," is a gang insignia, and red is the gang color.  *Id.*

---

[7] The Commonwealth re-called Sergeant Gerace as a rebuttal witness to refute Maglietta's direct testimony that he only participated in the assault of victim because he feared for his life from Appellant and Lee, gang members who had previously beaten Maglietta.

Before we reach the merits of this issue, we must consider whether Appellant has preserved it for appeal.

The Pennsylvania Rules of Evidence require that, in order to advance a claim of error in a ruling to admit or exclude evidence, a party must make a specific and timely objection. *See* Pa.R.E. 103(a)(1). "We have long held that '[f]ailure to raise a contemporaneous objection to the evidence at trial waives that claim on appeal.'" *Commonwealth v. Tha*, 64 A.3d 704, 713 (Pa. Super. 2013) (citing, among others, Pa.R.A.P. 302(a)).

Our review of the Notes of Testimony indicates that Appellant did not preserve this claim by lodging an objection at trial to the admission of the evidence he highlights in his Brief. Appellant has, thus, waived this issue for appellate review.

In his second issue, Appellant claims that the trial court abused its discretion in imposing an aggravated range sentence in light of the overwhelming mitigating evidence. Appellant's Brief at 18. Appellant concedes that the court placed specific reasons for the sentence imposed on the record, but baldly claims the court "did not clearly demonstrate an understanding of the applicable guideline range." *Id.* at 19-20.

Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. *Commonwealth v. Sierra*, 752 A.2d 910, 912 (Pa. Super. 2000).

Prior to reaching the merits of a discretionary sentencing issue, we must determine whether: (1) appellant has filed a timely notice of appeal; (2) the

issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) appellant's brief has a fatal defect; and (4) there is a substantial question that the sentence is not appropriate under the Sentencing Code. **Commonwealth v. Evans**, 901 A.2d 528, 533 (Pa. Super. 2006).

Here, Appellant filed a timely Notice of Appeal. Our review of Appellant's Motion for Reconsideration of Sentence indicates that he preserved his claim that the court abused its discretion in imposing an aggravated-range sentence. Appellant has also included a separate Pa.R.A.P. 2119(f) Statement in his Brief to this Court. We, thus, consider whether the issue Appellant preserved raises a substantial question.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." **Commonwealth v. Anderson**, 830 A.2d 1013, 1018 (Pa. Super. 2003) (citation omitted). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Sierra**, **supra** at 912-13 (citation and quotation omitted).

"We have held that a substantial question is raised where an appellant alleges the sentencing court erred by imposing an aggravated range sentence without consideration of mitigating circumstances." **Commonwealth v. Bowen**, 55 A.3d 1254, 1263 (Pa. Super. 2012). Thus, we proceed to review

the merits of Appellant's claim that his aggravated range sentence was excessive and an abuse of the court's discretion.

After a careful review of the parties' arguments and the record, we conclude that this issue warrants no relief, and we adopt the comprehensive Opinion of the Honorable Merrill M. Spahn, Jr. as to this issue as our own. *See* Trial Ct. Op., 3/19/18, at 14-16 (detailing its extensive consideration of Appellant's PSI report; mental health report; age; limited prior criminal history; educational history; family background; involvement in the community; the severity of the crime; and rehabilitative needs when fashioning Appellant's individualized sentence, and concluding that Appellant's sentence did not violate the fundamental norms underlying the sentencing process). *See also* N.T. Sentencing, 8/7/17, at 13-20.

Judgment of Sentence affirmed. The parties are directed to attach a copy of the trial court's March 19, 2018 Opinion to any future filings.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/07/2019

- 9 -

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF PENNSYLVANIA      :
     :
vs.      :      No.    CP-36-CR-0000814-2016
     :
     :
JOSHUA ELLIS      :

**OPINION PURSUANT TO RULE 1925(a) OF THE**
**PENNSYLVANIA RULES OF APPELLATE PROCEDURE**

BY: SPAHN, JR., J.

Defendant has filed a direct appeal to the Superior Court of Pennsylvania raising claims

regarding the weight and sufficiency of the evidence presented at trial; challenging the introduction of

certain evidence related to gang activity; and, challenging the discretionary aspects of his sentence. Said

claims will be thoroughly addressed herein.

On January 6, 2016, Defendant was charged with allegedly having committed one count of

Aggravated Assault[1] and one count of Criminal Conspiracy to Commit Aggravated Assault[2] arising out

of an incident that occurred on December 25, 2015 in Lancaster City, Lancaster County, Pennsylvania.

On May 19, 2017, the instant matter proceeded to trial before the below signed member of the

trial court and a jury. On May 25, 2017, Defendant was found guilty on both charged counts.

Additionally, by way of special inquiry, the jury unanimously found that the victim suffered serious

bodily injury as the result of the instant offenses. The trial court ordered a Pre-Sentence Investigation

and deferred sentencing pending the completion of said Pre-Sentence Investigation.

---

[1] 18 Pa. C.S. §2702(a)(1)
[2] 18 Pa. C.S. §903

The trial court sentenced Defendant on August 7, 2017 as follows:

Count I - Aggravated Assault - Not less than five (5) years nor more than ten (10) years incarceration

Count II – Criminal Conspiracy to Commit Aggravated Assault - Not less than three (3) years nor more than six (6) years incarceration

The sentences were imposed concurrently. As such, the trial court imposed an aggregate sentence of not less than five (5) years nor more than ten (10) years incarceration. The court also set restitution in the amount of $7,786.37 and indicated Defendant was not eligible for participation in the RRRI initiative. (N.T., Sentencing, August 7, 2017 at pp. 19-20).

Defendant filed a timely Post-Sentence Motion on August 17, 2017. Defendant filed a Brief in Support of Post-Sentence Motion on October 11, 2017. The Commonwealth filed a Memorandum in Opposition thereto on October 20, 2017. The trial court denied Defendant's Post-Sentence Motion by way of Court Order entered on November 9, 2017.

On November 29, 2017, Defendant filed a timely Notice of Appeal to the Superior Court of Pennsylvania. By way of Court Order dated January 2, 2018, Defendant was directed to file a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Defendant filed his Statement of the Matters Complained of Pursuant to Pennsylvania Rule of Appellate Procedure, Rule 1925(b) on January 19, 2018. The Commonwealth filed a Response thereto on January 28, 2018. As such, this matter is ripe for review.

## DISCUSSION

In his Concise Statement of Matters Complained of on Appeal, Defendant raises the following matters for appellate review:

1. The verdict was against the weight of the evidence.

2

2. The evidence was insufficient to support the guilty verdict.

3. The Court abused its discretion in allowing the Commonwealth to present gang-related evidence in rebuttal. As not only did defendant, Maglietta not open the door to the gang-related activity, but the gang-related activity was irrelevant and significantly more prejudicial than probative.

4. The Court abused its discretion in sentencing Joshua Ellis to 3 to 10 years of incarceration, despite the overwhelming mitigating evidence presented at both Sentencing and the Motion to Reconsider Sentence.

(N.T, Concise Statement of the Matters Complained of Pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), January 19, 2018).

## A. SUFFICIENCY AND WEIGHT OF THE EVIDENCE

Defendant's initial claims of error raise challenges to the sufficiency and weight of the evidence presented at trial.

In reviewing Defendant's challenge to the sufficiency of the evidence, the appellate court need view the evidence produced at trial in the light most favorable to the Commonwealth as verdict winner to determine if it is sufficient to allow a reasonable jury to find each element of the offenses charged beyond a reasonable doubt. Commonwealth v. Slocum, 86 A.3d 272, 275 (Pa. Super. 2014).

> The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

Id.

For Defendant to prevail on his claim that the evidence is insufficient, it must be said that accepting all the evidence and all reasonable inferences drawn from the evidence upon which, if believed, the verdict could properly have been based, that the evidence would be insufficient in law to find beyond a reasonable doubt that he is guilty of the crime charged. Commonwealth v. Meadows, 369

3

A.2d 1266, 1268 (Pa. 1977); <u>Commonwealth v. Quel,</u> 27 A.3d 1033, 1037-38 (Pa. Super. 2011). It is axiomatic that "[b]eyond a reasonable doubt" has never been construed to equate to "beyond all doubt." <u>See, e.g., Commonwealth v. Jones,</u> 858 A.2d 1198, 1201-04 (Pa. Super. 2004).

In reviewing Defendant's contention that the verdict is against the weight of the evidence produced at trial[3], the Pennsylvania appellate courts have repeatedly held that "[t]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." <u>Commonwealth v. Charlton,</u> 902 A.2d 554, 561 (Pa. Super. 2006). A verdict is only against the weight of the evidence if it is so contrary to the evidence that it shocks one's sense of justice. <u>Id.</u>

A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. <u>Commonwealth v. Widmer,</u> 744 A.2d 745 (Pa. 2000). Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. <u>Id.</u> An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. <u>Id.</u>

> "A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice"

<u>Commonwealth v. Widmer,</u> 744 A.2d 745, 751-52 (Pa. 2000).

---

[3] The Pennsylvania appellate courts have routinely held that a motion for a new trial on the grounds that the verdict in contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict. <u>Commonwealth v. Whiteman,</u> 485 A.2d 459 (Pa. Super. 1984). As such, Defendant is presently raising facially inconsistent claims of error. Despite said inherent inconsistencies, the trial court will herein address all claims raised by Defendant.

A new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. Commonwealth v. Clay, 64 A.3d 1049 (Pa. 2013).

The Pennsylvania Crimes Code defines the crime of Aggravated Assault as follows:

(a) Offense defined. ---

> A person is guilty of aggravated assault if he: (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life."

18 Pa. C.S.A. §2702(a)(1).

"A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa. C.S.A. § 901(a).

As applied to the offense of Aggravated Assault, "serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa. C.S.A. §2301. "A person acts intentionally with respect to a [serious bodily injury] ... when it is his conscious object to engage in conduct of that nature or to cause such a result." 18 Pa. C.S.A. §302(b)(1). "A person acts knowingly with respect to a [serious bodily injury] ... when he is aware that his conduct is of that nature or to cause such a result." 18 Pa. C.S.A. §302(b)(2). "A person acts recklessly with respect to a [serious bodily injury] .... when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct." 18 Pa. C.S.A. §302(b)(3). "The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." *Id.* Such recklessness is shown by the kind of reckless conduct from which a life-threatening injury is almost certain to occur. See, Commonwealth v.

5

O'Hanlon, 653 A.2d 616 (Pa. 1995); Commonwealth v. McHale, 858 A.2d 1209 (Pa. Super. 2004);

Pa.S.S.J.I. (Crim.) 15.2702B.

"A person is legally accountable for the conduct of another person when ... (3) he is an accomplice of such other person in the commission of the offense." 18 Pa. C.S.A. §306. "A person is an accomplice of another person in the commission of an offense if: (1) with the intent of promoting or facilitating the commission of the offense, he: ... (ii) aids or agrees or attempts to aid such other person in planning or committing it." 18 Pa.C.S.A. § 306; See, Commonwealth v. Vining, 744 A.2d 310, 321 (Pa. Super. 2000) (transcending mere association, accomplice liability requires active and purposeful participation in criminal activity with others), *appeal dismissed as improvidently granted*, 774 A.2d 1246 (Pa. 2001).

At trial in this matter, the Commonwealth presented evidence that Defendant was more than just present, but, rather, was actively involved in the assaults upon the victim. Sergeant Michael John Gerace, a patrol sergeant with the Lancaster City Bureau of Police, where he has been employed for seventeen years, testified that during the investigation he reviewed surveillance video footage from the Lancaster Community Safety Coalition of the assault in this matter. (N.T., Jury Trial, Volume I of IV, May 22, 2017 at p. 136; Commonwealth's Exhibits 5-9). Sergeant Gerace was also able to obtain video footage from a surveillance camera located at Molly's Pub, the scene of the assault. (N.T., Jury Trial, Volume 1 of IV, May 22, 2017 at p. 151; Commonwealth's Exhibits 5-9). Sergeant Gerace had the ability to view much of the assault which had taken place from his review of the video footage. (*Id.*) He observed that Mr. Lee, a co-defendant, had punched the victim on the left side of his face, had pushed the victim to the ground, and had further punched and kicked the victim in the face. (*Id.*). Sergeant Gerace explained that the video footage showed Mr. Lee scoop up the victim, while being followed by Mr. Ellis (Defendant) and Mr. Rodriquez-Cruz, another co-defendant. (N.T., Jury Trial, Volume I of IV,

6

May 22, 2017 at p. 176). Sergeant Gerace described the victim, at this point of the assault as "a virtually unconscious body". (*Id.*). He then viewed Defendant, along with Mr. Lee, Mr. Rodriguez-Cruz, take the victim to an unknown location and return to Molly's Pub without the victim. (*Id.*). Sergeant Gerace explained that the video footage then depicted the victim coming back to the area between Molly's Pub and the adjoining home of Mr. Maglietta, another co-defendant. (N.T., Jury Trial, Volume I of IV, May 22, 2017 at p. 177). All perpetrators, including Defendant, followed the victim at this time. (*Id.*). Sergeant Gerace observed the victim, who was lying back on a planter on the side of Molly's Pub, being kicked by Mr. Maglietta and assaulted by all perpetrators, including Defendant. (N.T., Jury Trial, Volume I of IV, May 22, 2017 at p. 186 and pp. 152-153). As the result of this vicious and prolonged assault, the victim suffered multiple injuries, including black eyes, fragmented bones in his ears, injuries to his nose, pain to his ribs, bleeding on his brain, the inability to properly walk for several months, and lingering memory issues. (N.T., Jury Trial, Volume I of IV, May 22, 2017 at p. 86-88).

In this matter, the trial court firmly believes that the totality of the evidence presented at trial established that Defendant's actions supported his conviction of Aggravated Assault. This defendant directly physically assaulted the victim numerous times; followed the victim with the co-defendants; helped carry the victim, while unconscious, to a separate location across the street; and, left the victim lying unconscious for an extended time without summoning medical attention. While there can never be a precise determination as to whether this Defendant's blows resulted in the serious bodily injury suffered by the victim, there can simply be no doubt that the totality of the actions of this Defendant, taken in concert with the actions of accomplices and co-conspirators, unfortunately and unquestionably achieved such a result.

Therefore, upon consideration of the totality of the evidence presented at trial and for the reasons as set forth above, the verdict in the instant matter is not contrary to the weight of the evidence presented

7

at trial. While Defendant is, no doubt, displeased with the verdict reached by the jury in this matter, such verdict is supported by the evidence presented at trial and all relevant inferences therefrom. It is quite apparent that the jury resolved the relevant credibility issues in favor of the witnesses presented by the Commonwealth and chose to specifically reject the testimony and arguments presented by Defendant and Co-Defendants. It is ultimately the purview of the jury, as fact finder, to make such credibility determinations. The trial court cannot weigh upon the credibility of the witnesses. Accordingly, Defendant has failed to demonstrate that the verdict in this matter served to shock one's sense of justice. As such, Defendant's claim as to sufficiency and weight of the evidence in this regard must fail.

## B. INTRODUCTION OF GANG-RELATED TESTIMONY INTO EVIDENCE

Next, Defendant raises a challenge to the admission of certain evidence at trial related to gang activity on the part of the perpetrators of the instant assault.

During his opening remarks, counsel for Co-Defendant, Anthony Maglietta, told the jury that Mr. Maglietta owned Molly's Pub and hired Mr. Ellis and Mr. Lee one year prior to the instant assault. (N.T., Jury Trial II of IV, May 23, 2017, at pp. 287-288). Counsel for Mr. Maglietta continued by stating that Mr. Maglietta only subsequently learned that the individuals he had hired were members of a gang and they started to wear their gang-related colors instead of their work uniforms. (N.T., Jury Trial II of IV, May 23, 2017 at p. 288). Counsel Mr. Maglietta claimed that Mr. Maglietta was previously beaten by these individuals and only minimally participated in this assault, inasmuch as he feared for his life. *Id.*

In rebuttal, the Commonwealth elicited testimony from Sergeant Gerace, without objection, regarding a Facebook photograph from Co-Defendant, Raymond Lee's Facebook page depicting Mr. Maglietta and this Defendant eating a meal together, in which Defendant was wearing a black t-shirt with red letters, SMM, on the front and Mr. Maglietta was wearing a red t-shirt. (N.T., Jury Trial III of

8

IV, May 24, 2017 at pp. 415-416; Commonwealth Exhibit 14). Again, without objection, Sergeant Gerace testified that the significance was that the letters on Defendant's shirt stand for Sex, Money, Murder and the red coloring of Mr. Maglietta's shirt were indicative of the representative set or the Blood group or street gang in which they associate. *Id.* at 416. The Commonwealth sought to publish Commonwealth Exhibit 14 to the jury and did so without any objection. *Id.* Sergeant Gerace further testified, in direct response to a cross-examination question posed by counsel for this Defendant, that Defendant was in a gang at the time of this assault. *Id.* at p. 418.

In considering Defendant's claims in this regard, it must be initially noted that Defendant never sought to sever his trial from that of Mr. Maglietta and never offered an objection to the admission of such evidence at trial. Only upon the completion of Sergeant Gerace's lengthy testimony, counsel for Co-Defendant, Raymond Lee, requested a mistrial and severance as the result of the admission of such testimony regarding alleged gang activity and involvement. (N.T., Jury Trial III of IV, May 24, 2017 at pp. 418-419). Defendant did not join in said requests. The court denied Mr. Lee's motions and indicated that it would give a curative instruction to the jury limiting the use of any challenged prejudicial testimony. (N.T., Jury Trial III of IV, May 24, 2017 at p. 419).

Rule 103(a)(1) of the Pennsylvania Rules of Evidence imposes a requirement that a party claiming error in a ruling to admit or exclude evidence must make a timely objection ... and state the specific ground [for said objection], unless the substance was apparent from the context. Pa. R.E. 103(a)(1). Inasmuch as Defendant failed to offer any objection at trial to the admission of the evidence now challenged, he has waived the issue and should be precluded to doing so herein. See, Commonwealth v. Kuterbach, 326 A.2d 283 (Pa. 1974).

Assuming arguendo that Defendant has not waived his claims in this regard, this court properly admitted said evidence at trial.

9

A trial court should find evidence admissible if it is relevant, that is "if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding a material fact." Commonwealth v. Williams, 896 A.2d 523, 539 (Pa. 2006) (quoting Commonwealth v. Stallworth, 781 A.2d 110, 117-118 (Pa. 2001)).

Pennsylvania Rule of Evidence 403 sets forth that relevant evidence "may be excluded if its probative value is outweighed by the danger of unfair prejudice[.]" Pa.R.E. 403. The comment to Pa.R.E. 403 defines "unfair prejudice" as "a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Pa.R.E. 403 cmt. Furthermore, our Supreme Court has noted previously that "[e]vidence will not be prohibited merely because it is harmful to the defendant." Commonwealth v. Dillon, 925 A.2d 131, 138–139 (Pa. 2007). "[E]xclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case." Commonwealth v. Page, 965 A.2d 1212, 1220 (Pa. Super. 2009) (citing Commonwealth v. Owens, 929 A.2d 1187, 1191 (Pa. Super. 2007)).

As noted above, counsel for Co-Defendant Anthony Maglietta based his defense theory on a claim that Mr. Maglietta had been initially unaware that his employees were involved in gang activity; that he only, subsequently, became aware that these individuals were involved in gang activities; that he had previously been assaulted by these individuals; and, that he only minimally participated in the instant assault upon the victim out of a fear for his own life. The challenged evidence presented by the Commonwealth during rebuttal, which was limited to a photograph and brief testimony regarding the significance thereof, was directly relevant to rebut Mr. Maglietta's claims. The introduction of said evidence permitted the attorney for the Commonwealth to argue that Mr. Maglietta was aware of such

10

gang activity, was complicit in such activity, and was not fearful of any of the other defendants. As such, the probative value of such evidence clearly outweighed any prejudicial impact.

To properly limit any prejudicial effect upon Defendant at this joint trial, the court offered a curative instruction to the jury regarding the limited use of any testimony regarding gang activity. See, Commonwealth v. Housman, 986 A.2d 822 (Pa. 2009); Commonwealth v. Povish, 387 A.2d 1282 (Pa. 1978). Said instruction clearly informed the jury that Defendant was not on trial for any such alleged gang or prior criminal behavior. The jury was instructed that such evidence was before them for sole purpose of addressing Mr. Maglietta's version of the events and that such evidence may not be considered by them in any way other than for that specific purpose. Further, the court instructed the jury that they must not regard this evidence as showing that Defendant was a person of bad character or criminal tendencies from which they might infer guilt. (N.T., Jury Trial III of IV, May 24, 2017 at pp. 503-504). As previously noted by our Supreme Court, there exists a presumption in the law that the jury followed the instructions given by the trial judge. Commonwealth v. Steele, 559 A.2d 904 (1989). Generally speaking, an instruction to the jury to consider evidence only with respect to the defendant against whom it is offered is sufficient to remove any potential prejudice. Richardson v. Marsh, 481 U.S. 200, 206 (1987); Commonwealth v. Travers, 768 A.2d 845, 847 (Pa. 2001).[4]

Accordingly, Defendant's claim that the trial court erred in allowing the Commonwealth to present gang-related testimony into evidence must fail.

## C. DISCRETIONARY ASPECT OF SENTENCE

Lastly, Defendant challenges the discretionary aspects of sentencing alleging that the court failed to consider mitigation evidence presented during the sentencing hearing and in the subsequent

---

[4] To the extent that Defendant may now seek to advance any argument that the challenged evidence would only be admissible against Mr. Maglietta, and not Defendant, it must be noted that Defendant never sought severance of his trial from that of his co-defendants.

11

Motion to Reconsider Sentence.

There is no automatic right to appeal regarding such claims. See, 42 Pa. C.S.A.§ 9781; Commonwealth v. Colon, 102 A.3d 1033, 1042 (Pa. Super. 2014) (citing Commonwealth v. Hanson, 856 A.2d 1254, 1257 (Pa. Super. 2004)); see, Commonwealth v. Marts, 889 A.2d 608, 611 (Pa. Super. 2005). Before a court may consider a discretionary sentencing claim, a defendant must demonstrate that: (1) the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (2) a timely notice of appeal was filed; (3) Defendant fully complied with Pennsylvania Rule of Appellate Procedure 2119(f); and, (4) there was a "substantial question" that the sentence imposed was not appropriate under the Sentencing Code. 42 Pa. C.S.A. §9781(b); Colon, 102 A.3d at 1042-43.

In the instant matter, Defendant has, to date, satisfied the first two prerequisites. He preserved his claim by filing a timely post-sentence motion. Following this court's denial of said Motion, Defendant timely filed a Notice of Appeal.

This court can only assume that Defendant will likewise satisfy the requirements of Rule 2119(f) when he files his appellate brief to satisfy the third prerequisite.

As to the fourth prerequisite, the determination as to whether an issue constitutes a "substantial question" is to be "evaluated on a case-by-case basis." A substantial question must "advance a colorable argument" that the sentence imposed was either "inconsistent with a specific provision of the Sentencing Code; or ... contrary to the fundamental norms which underlie the sentencing process." Commonwealth v. Cunningham, 805 A.2d 566, 574 (Pa. Super. 2002). In Commonwealth v. Mobley, 581 A.2d 949 (Pa. Super. 1990), the Superior Court determined that a claim that the sentence failed to take into consideration the defendant's rehabilitative needs and was manifestly excessive did not raise a substantial question where sentence was within statutory guidelines and within sentencing guidelines. In

12

this matter, Defendant received a sentence that is contained in the aggravated range of the sentencing guidelines.

Assuming, *arguendo*, that Defendant's general claim is that the court failed to fully and adequately consider the relevant sentencing factors set forth in 42 Pa. C.S.A. §9721(b), the court will nevertheless review said claim herein. See, Commonwealth v. Buterbaugh, 91 A.3d 1247 (Pa. Super. 2014).

Our Supreme Court has stated that the rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is "in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it". Commonwealth v. Ward, 568 A.2d 1242, 1243 (Pa. 1990). See also, Commonwealth v. Jones, 613 A.2d 587, 591 (Pa. Super. 1992) (*en banc*) (offering that the sentencing court is in a superior position to "view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime."). Moreover, the Supreme Court has determined that sentencing courts enjoy an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed. Commonwealth v. Walls, 926 A.2d 957, 961 (Pa. 2007). The Superior Court has embraced this principle stating that "the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review". Commonwealth v. Williams, 69 A.3d 735 (Pa. Super. 2013).

Our Supreme Court has determined that where the trial court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed. Commonwealth v.

Cevers, 546 A.2d 12, 18-19 (Pa. 1988); Commonwealth v. Ventura, 975 A.2d 1128, 1135 (Pa. Super. 2009).

In sentencing Defendant in the instant matter, the court was guided by an extensive pre-sentence investigation. In fashioning sentence, the court gave thoughtful consideration to: the penalties authorized by the Legislature; the sentencing guidelines and all of the applicable ranges, including the standard aggravated and mitigated ranges; the facts and circumstances of the current offenses; the pre-sentence investigation and all attachments thereto, which include documents regarding current offenses; Defendant's letter to the court; letters of support from various friends, family, pastors, co-workers, and supervisors of Defendant; the comments made by the attorney for the Commonwealth; the statement of the victim's mother; the comments of the defendant's attorney; the comments of Defendant; Defendant's background; Defendant's rehabilitative needs; the need for there to be a deterrence; and, the need for the protection of the entire community. (N.T., Sentencing, August 7, 2017 at pp. 13-14).

The court considered Defendant's age and educational background. The court noted Defendant's lack of a prior criminal background. The court further considered Defendant's upbringing, relationship history, mental health history, and employment history. Specifically, the court noted that Defendant is 34 years of age. He is a high school graduate, and there is no history of learning disabilities or disciplinary issues in school. Defendant was active in the music and athletic programs while in high school; attended Thaddeus Stevens School in 2004-2005, where he performed well academically. (N.T., Sentencing, August 7, 2017 at p. 14).

As noted in the pre-sentence investigation, Defendant had a very positive upbringing, having been raised by his parents with his adopted siblings, and there is a very strong family structure. Defendant's father was a very positive role model for him until his unfortunate passing earlier this year. Defendant has a very limited prior criminal record, consisting of a summary offense of retail theft in

14

2002 and a disorderly conduct summary offense in 2013, yielding a zero-prior record score for sentencing purposes. Defendant is unmarried, but has been involved in a lengthy committed relationship. Prior to Defendant's incarceration was helping raise his significant other's eight-year-old son from a prior relationship. Defendant is active in his church and sincere in his faith. (N.T., Sentencing, August 7, 2017 at p. 15).

The court noted that there was a very limited drug and alcohol history with Defendant admitting use of alcohol at age 20, although it appears that any alcohol use was social in nature and was not problematic. There does not appear to be any noted mental health history. Defendant generally maintained a positive employment history, which included employment at his own company related to the music field from 2008 to the present time. Defendant was employed at Molly's Pub. Defendant was also employed at the Eden Resorts and Suites, where Defendant served as a project coordinator and recreational director. The court found Defendant's letter to reflect sincere remorse and a general positive lifestyle leading to these events. Defendant's letter and the numerous letters of support submitted on his behalf reflect a recognition of the foolishness of his actions. (N.T., Sentencing, August 7, 2017 at p. 16).

The court noted that this was a very difficult matter to consider the equities in imposing sentence. The court had to weigh the positives in Defendant's life in consideration of what happened during this violent incident. In doing so, the court noted that this matter was more than an isolated assault. This criminal incident was a series of connected vicious assaults over an extended timeframe. The assaults that the victim suffered that evening were severe; sustained; and, absolutely senseless. Striking to the court was the extended period when the victim was knocked unconscious and left to lie unconscious, left to his own fate with no concern by anyone. After being rendered unconscious for an extended, the victim regained his feet only to be beaten back again. The court noted that said actions were absolutely inhumane, and that there is no place for that type of conduct in a civilized society.

15

Defendant's actions and those of his co-defendants were all unique and the court noted that Defendant was to receive an individualized sentence based upon the applicable circumstances and facts to him. The court noted that, under the laws of the Commonwealth of Pennsylvania, as soon as an individual becomes an accomplice or co-conspirator, the person is also liable for the conduct of others. The court went on to note that Defendant was not going to be judged by the conduct of these others and any prior instances at the same location, which did not involve Defendant. There is nothing about the prior environment of Molly's Pub that the court considered in the sentencing of Defendant. (N.T., Sentencing, August 17, 2017 at pp. 17-19).

The court's sentence in this matter is a reflection upon the penalties; upon Defendant's rehabilitative needs; and, upon the statutory criteria of the need for there to be deterrence and protection of the community. Most importantly, the court's sentence is a balancing of the equities as to Defendant as a person when weighed against what happened on the night of the incident. (N.T., Sentencing, August 17, 2017 at p. 19).

As reflected in the aforementioned comments and considerations noted by the court, this court found sentencing in this matter to be a difficult task. The court believes that a sentence in the aggravated range is appropriate and that any lesser sentence would depreciate the seriousness of this conduct. The sentence imposed in this case was not manifestly unreasonable, nor was it the result of partiality, prejudice, bias, or ill-will. It was the result of extensive reflection upon all considerations discussed above.

16

## CONCLUSION

Accordingly, for the reasons set forth above, I conclude the grounds identified by Defendant in his Concise Statement of the Matters Complained of Pursuant to Pennsylvania Rule of Appellate Procedure, 1925(b) lack merit and respectfully request that the instant appeal be DENIED.

BY THE COURT:

MERRILL M. SPAHN, JR., JUDGE
March 19, 2018

ATTEST:

Copies to:    Ryan D. Tilley, Esquire, Office of the District Attorney of Lancaster County
Lonny Fish, Esquire, Counsel for Defendant

17