J-S51029-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
WAYNE EUGENE BRADLEY :
:
Appellant : No. 1969 MDA 2018

Appeal from the Judgment of Sentence Entered August 1, 2018
In the Court of Common Pleas of Susquehanna County
Criminal Division at No(s): CP-58-CR-0000467-2017

BEFORE: PANELLA, P.J., GANTMAN, P.J.E., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.E.: **FILED OCTOBER 07, 2019**

Appellant, Wayne Eugene Bradley, appeals the judgment of sentence entered in the Susquehanna County Court of Common Pleas, following his jury trial convictions for terroristic threats, simple assault and his court conviction for disorderly conduct.[1] We affirm.

The trial court opinion set forth the relevant facts and procedural history of this case. Therefore, we have no reason to restate them.

Appellant raises the following issues on appeal:

> WAS THE EVIDENCE INSUFFICIENT TO ESTABLISH, BEYOND A REASONABLE DOUBT, THAT APPELLANT COMMITTED THE OFFENSE OF TERRORISTIC THREATS WHERE IT FAILED TO ESTABLISH THAT APPELLANT COMMUNICATED A THREAT TO COMMIT A CRIME OF VIOLENCE OR POSSESSED THE INTENT TO TERRORIZE?

---

[1] 18 Pa.C.S.A. §§ 2706(a)(1), 2701(a)(3), and 5503(a)(4), respectively. Appellant does not challenge his disorderly conduct conviction.

WAS THE EVIDENCE INSUFFICIENT TO ESTABLISH, BEYOND A REASONABLE DOUBT, THAT APPELLANT COMMITTED THE OFFENSE OF SIMPLE ASSAULT WHERE IT FAILED TO ESTABLISH THAT APPELLANT POSSESSED THE INTENT TO PUT ANOTHER IN FEAR OF IMMINENT SERIOUS BODILY INJURY?

(Appellant's Brief at 3).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Jason J. Legg, P.J., we conclude Appellant's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (*See* Trial Court Opinion, filed November 13, 2018, at 4-6) (finding Commonwealth presented evidence that Appellant initially approached construction site wielding large metal bar; Appellant was yelling, agitated, and threatened one victim; Appellant asked victim if he wanted to see what would happen if victim did not move his truck; Appellant then left scene and returned holding rifle, which Appellant discharged into air; Appellant aimed his rifle at back of truck operated by another victim; when that victim asked Appellant if he was going to shoot members of construction crew, Appellant nodded "yes"; sufficient evidence supported Appellant's terroristic threats and simple assault convictions). Accordingly, we affirm based on the trial court opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/7/2019

**IN THE COURT OF COMMON PLEAS OF
SUSQUEHANNA COUNTY, PENNSYLVANIA**

Commonwealth of Pennsylvania      :

                 :

     vs.                   :

                 :

Wayne Eugene Bradley,       :      **No. 2017 – 467 C.R.**

         **Defendant.**      :

## OPINION

### I.    Procedural History

On August 17, 2017, a police criminal complaint was filed against defendant Wayne Eugene Bradley (hereinafter referred to as Bradley) containing four counts: Count 1: Terroristic Threats (M-1) under 18 Pa. C.S. § 2706(a)(1); Count 2: Simple Assault (M-2) under 18 Pa. C.S. § 2701(a)(3); Count 3: Recklessly Endangering Another Person (M-2) under 18 Pa. C.S. § 2705; and Count 4: Disorderly Conduct (S) under 18 Pa. C.S. § 5503(a)(4). On December 14, 2017, a preliminary hearing was conducted and all counts were bound over to the Court of Common Pleas.

On January 25, 2018, the Commonwealth filed the criminal information containing the same counts alleged in the police criminal complaint. On July 10, 2018, the matter proceeded to a jury trial. At the conclusion of the jury, the jury found Bradley guilty of Counts 1 and 2 and not guilty of Count 3. As to summary offense under Count 4, the court found Bradley guilty.

On August 1, 2018, Bradley was sentenced to an aggregate sentence of 6 months to 23 ½ months in the Susquehanna County Correctional Facility followed by a 2-year consecutive probationary period. Upon an oral motion for bail, the court granted Bradley bail ($10,000 unsecured) pending his appeal of the convictions. On August 10,

1

2018, Bradley filed a post-trial motion asserting the following grounds: (1) a motion for judgment of acquittal contending that there was insufficient evidence to support his convictions; (2) a motion for a new trial contending that the verdicts were against the weight of the evidence; and (3) a motion for a new trial contending that the verdicts were against the weight of the law.

On November 7, 2018, the parties appeared for oral argument. At that time, Bradley contended that he no longer desired his counsel, Edmund J. Scacchitti, Esquire, to represent him. Upon an oral motion, Attorney Scacchitti was granted leave to withdraw. No oral argument was conducted based upon Bradley's *pro se* status. The matter is now ripe for disposition.

## II.    Factual Background

Perry's General Contracting was working on a building project in New Milford, Pennsylvania on August 17, 2017. (N.T., July 10, 2018, at 57-61.) One of the owners of Perry's General Contracting, John Perry (hereinafter referred to as John), was at the construction site. (N.T., July 10, 2018, at 60-61.) As the Perry crew was working on the construction project, Bradley arrived in a tractor trailer on the public roadway adjacent to the construction project. (N.T., July 10, 2018, at 62.)

As the tractor trailer was pulling up to the construction site, Bradley stuck his head out of the window and began yelling at the Perry crew. (N.T., July 10, 2018, at 62.) After the tractor trailer stopped, Bradley got out, approached John and continued to scream at him. (N.T., July 10, 2018, at 62.) Bradley was carrying a metal bar which was three feet in length. (N.T., July 10, 2018, at 64, 111-112, 161; Def. Ex. 3.) As he was screaming at John, Bradley was swinging the metal bar like a baseball bat in a

2

threatening manner. (N.T., July 10, 2018, at 64-65.) Bradley was threatening to "bust" John's "head open." (N.T., July 10, 2018, at 65.) While this was occurring, John was located on a scaffolding and was working on the roof. (N.T., July 10, 2018, at 63.)

After some give and take between the parties, Bradley left the construction site and went to his residence located on the other side of the street. (N.T., July 10, 2018, at 65.) John's brother, David Perry (hereinafter referred to as David), got down off the roof and went to move a parked truck. (N.T., July 10, 2018, at 66-67; 113-114.) At that point, Bradley came out of his residence holding a rifle. (N.T., July 10, 2018, at 67.) While standing on the other side of the street, Bradley fired a round into the air. (N.T., July 10, 2018, at 68, 114, 164.) While David did not see the gun pointed at him, he heard the gunshot and knew that it was close to him. (N.T., July 10, 2018, at 114.) After firing the weapon, Bradley then took aim at the back of the truck that David was operating. (N.T., July 10, 2018, at 68, 70-71.) In response to Bradley aiming the rifle at his brother, John began to scream from his scaffolding. (N.T., July 10, 2018, at 68.) After David got out of his truck, he saw Bradley holding the weapon with a crazed look. (N.T., July 10, 2018, at 116, 133.) David yelled to him whether he planned on shooting them and Bradley nodded his head in the affirmative. (N.T., July 10, 2018, at 116, 133). Bradley left the scene. (N.T., July 10, 2018, at 71., 133)

During his testimony, Bradley admitted to confronting John while holding the metal bar. (N.T., July 10, 2018, at 184, 186.) Bradley testified that he asked John whether he wanted to move the Perry truck or whether he wanted "to see what happens" if he did not move it. (N.T., July 10, 2018, at 184.) When asked what he meant by these words, Bradley stated that "if he didn't want to move it, then it's going to be some

3

consequences." (N.T., July 10, 2018, at 193.) Bradley testified that John responded

that he wanted to see what was going to happen if the Perry truck was not moved.

(N.T., July 10, 2018, at 184.) In response, Bradley walked over to his house, retrieved a

deer rifle, put one round into the chamber, walked back outside and "touched it off."

(N.T., July 10, 2018, at 185.)

## III.    Discussion

### a.  Motion for Judgment of Acquittal

"A motion for judgment of acquittal challenges the sufficiency of the evidence to

sustain a conviction on a particular charge, and is granted only in cases in which the

Commonwealth has failed to carry its burden regarding the charge." Commonwealth v.

Foster, 33 A.3d 632, 635 (Pa. Super. 2011) (quoting Commonwealth v. Hutchinson, 947

A.2d 800, 805-  ' (Pa. Super. 2008), appeal denied, 980 A.2d 606 (Pa. 2009)). Where

a defendant is challenging the sufficiency of the evidence, the following standard must

be applied:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable a fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing on the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Quel, 27 A.3d 1033, 1037-38 (Pa. Super. 2011).

4

As to Count 1, the elements of the crime of terroristic threats are as follows: (1) the defendant must make a threat to commit a crime of violence; and (2) the threat must be communicated with the intent to terrorize the victim or with reckless disregard of the risk that the victim would be terrorized. See Commonwealth v. Beasley, 138 A.3d 39, 46 (Pa. Super. 2016); 18 Pa. C.S. § 2706(a)(1). In reviewing the record in a light most favorable to the Commonwealth, Bradley initially approached the construction worksite wielding a large metal bar, Bradley was yelling, agitated and threatening John, he asked John if he wanted to see what would happen if the company truck was not moved, Bradley then left and returned holding a rifle which he discharged into the air, aimed at the back of the company truck being operated by David, and then nodded when David asked him if he was going to shoot members of the Perry crew. These facts plainly provide ample evidence to support: (1) that Bradley had threatened to commit a crime of violence, namely murder or aggravated assault; and (2) that Bradley had intended to terrorize the victims.[1]

This case is similar to Commonwealth v. Hudgens, 582 A.2d 1352 (Pa. Super. 1990). In that case, the defendant argued with the victim and stated that he was going to "get him." Id. at 1355. The defendant then removed a Samurai-style sword which had been concealed in his pants. Id. The defendant held the sword in close proximity to the victim's body and touched the victim's hand with it. Id. Thereafter, the defendant sheathed the sword and left. Id. The Superior Court concluded that the facts were sufficient to support a terroristic threats conviction. Id. at 1358 (finding that the facts

---

[1]     Significantly, Bradley conceded that he had fired his rifle in order to show the victims that there would be "consequences" if the company truck was not moved. Thus, Bradley plainly intended to terrorize the victims by utilizing a firearm and discharging it into the air as a means to assure their compliance to his demands.

5

were sufficient to "infer that [defendant] threated to stick the victim with the sword, and thereby cause death or serious bodily injury"); see also In re Maloney, 636 A.2d 671, 676 (Pa. Super. 1994) (affirming conviction for terroristic threats where defendant pointed a gun at victim and told him to "get the fuck out of here"); Commonwealth v. White, 335 A.2d 436, 439 (Pa. Super. 1975) (finding that defendant committed terroristic threats where he told victim he was going to "grab her," he carried her into an abandoned house, and then raised her skirt). Likewise, in this case, Bradley utilized a metal bar and a rifle, made a threatening statement that something was going to happen if the truck was not moved, fired a weapon into the air, and nodded when asked if he was going to shoot the Perry construction crew. When considering the totality of this conduct in a light most favorable to the Commonwealth, there is ample evidence to support Bradley's conviction for terroristic threats.

As to Count 2, the elements of the crime of simple assault by physical menace "are intentionally placing another in fear of imminent serious bodily injury through the use of menacing or frightening activity." Commonwealth v. Reynolds, 835 A.2d 720, 726 (Pa. Super. 2003); 18 Pa. C.S. § 2701(a)(3). Bradley made threatening comments while holding a large metal bar, he retrieved a rifle from his residence, returned to a location near the job site, continue to angrily yell, fired the weapon into the air, aimed the weapon at the back of the company truck that David was driving, and nodded when he was asked whether he planned on shooting members of the Perry construction crew. In reviewing the evidence in a light most favorable to the Commonwealth, the record supports the conviction Bradley's conviction for simple assault by physical menace and Bradley's motion for judgment of acquittal will be denied.

6

## b. Motion for New Trial – Weight of the Evidence Claim[2]

The standard of review for Bradley's weight of the evidence claim can be summarized as follows:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to given them equal weight with all the facts it to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

Commonwealth v. Thomas, 2018 WL 3679940, at *6 (Pa. Super. 2018) (quoting Commonwealth v. Clay, 64 A.3d 1049, 1054-55 (Pa. 2013)).

The facts in this case were largely undisputed: (1) Bradley approached John with a large metal bar; (2) Bradley was yelling and agitated; (3) Bradley John if John was going to move the company truck or whether John wanted to see what would happen if the truck was not moved; (4) John responded that he wanted to see what would happen, (5) Bradley went to his residence, retrieved a rifle and loaded it; and (6) Bradley returned to the sidewalk area near the construction site and discharged the rifle into the air while continuing to act in an angry and erratic manner.[3] As noted earlier, the record amply supports Bradley's convictions for terroristic threats and simple assault by

---

[2]    Bradley filed two separate motions for a new trial which will be considered collectively.
[3]    The only facts that Bradley did not concede where as follows: (1) Bradley denied that he threatened to use the metal bar on John; (2) Bradley denies aiming the rifle at the company truck with David inside of it; and (2) Bradley did not admit that he nodded his head when asked if he was going to shoot members of the Perry construction crew.

7

physical menace. While Bradley contends that he was not seeking to terrorize or menace anyone and that he was simply acting out of anger in the heat of the moment, these claims contradict the entirety of the record. Bradley's concedes that he fired the rifle to make certain that the victims knew there would be "consequences" if they failed to move the company truck. Bradley's testimony revealed that he knew exactly what he was doing and why he was doing it – he wanted to terrorize the victims into complying with his demands. The jury's verdict does not shock anyone's sense of justice; rather, it constituted a reasonable and only conclusion as to what Bradley intended to do through his sustained and threatening conduct. For these reasons, Bradley's motion for a new trial will be denied.

8