J-S22030-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALEXANDER ASENOV VITTONE | : | |
| | : | |
| Appellant | : | No. 726 MDA 2019 |

Appeal from the Judgment of Sentence Entered February 27, 2019
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0000038-2018

BEFORE:   OLSON, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED NOVEMBER 05, 2020**

This case returns to us following remand to give Alexander Asenov Vittone (Appellant) the opportunity to perfect his appeal. ***See Commonwealth v. Vittone***, 726 MDA 2019 (Pa. Super. June 8, 2020) (unpublished memorandum) (finding *per se* ineffectiveness under ***Commonwealth v. Rosado***, 150 A.3d 425 (Pa. 2016), where counsel failed to include in Appellant's brief a Rule 2119(f) statement in support of his only issue challenging the discretionary aspects of his sentence, the Commonwealth objected, and counsel's omission resulted in waiver).[1]

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The Rule states:

> An appellant who challenges the discretionary aspects of a sentence in a criminal matter **shall** set forth in his brief a concise

Appellant appeals from the judgment of sentence imposed after he pled guilty to one count of driving under the influence (DUI) and two counts of aggravated assault by vehicle while DUI.[2]

On August 20, 2017, while driving in York County, Appellant crossed into the opposite lane, causing a head-on collision and seriously injuring the occupants of the other vehicle. Affidavit of Probable Cause, 12/1/17. At the time of the collision, Appellant had a blood alcohol content (BAC) of 0.152%. *Id.*

Appellant entered his guilty plea on August 3, 2018, and on February 27, 2019, the trial court sentenced him to an aggregate 18 to 36 months of incarceration. Appellant filed a timely post-sentence motion, which the trial court denied on April 3, 2019. This appeal followed. Both Appellant and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

As noted above, this case was remanded after we determined that Appellant's counsel was *per se* ineffective. Upon remand, Appellant obtained new counsel, who filed a brief which includes a Rule 2119(f) statement, **see** Appellant's Brief at 17, and raises the following issues:

---

statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence.

Pa.R.A.P. 2119(f) (emphasis added).

[2] 75 Pa.C.S.A. §§ 3802(b) and 3735.1(a).

A. Whether the trial court abused its discretion when it sentenced the Appellant to 18-36 months in a State Correctional Facility without properly considering the characteristics of the Appellant, including his significant medical condition.

B. Whether Appellant's initial counsel was ineffective for failing to present information regarding the State Correctional Facility's ability to care for the Appellant.

Appellant's Brief at 6.

Appellant first challenges the discretionary aspects of his sentence. "The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." ***Commonwealth v. Buterbaugh***, 91 A.3d 1247, 1265 (Pa. Super. 2014). "An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence." ***Id.*** We conduct this four-part test to determine whether:

> (1) the appellant preserved the issue either by raising it at the time of sentencing or in a post[-]sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

***Commonwealth v. Baker***, 72 A.3d 652, 662 (Pa. Super. 2013) (citation omitted). "A defendant presents a substantial question when he sets forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process." ***Commonwealth v. Dodge***, 77 A.3d 1263, 1268 (Pa. Super. 2013) (citations omitted).

Appellant has complied with the first three prongs of the test by raising his discretionary sentencing claim in a timely post-sentence motion, filing a timely notice of appeal, and setting forth a concise statement pursuant to Rule 2119(f). Therefore, we examine whether Appellant presents a substantial question.

Appellant argues that the trial court abused its discretion by sentencing him "without properly considering the characteristics of Appellant, including his significant medical condition." Appellant's Brief at 6, 17. Appellant raises a substantial question. *See Commonwealth v. Swope*, 123 A.3d 333, 340 (Pa. Super. 2015) ("This Court has also held that an excessive sentence claim — in conjunction with an assertion that the court failed to consider mitigating factors — raises a substantial question.") (citations omitted).

We review this claim mindful of the following:

> Sentencing is a matter vested in the sound discretion of the sentencing judge. The standard employed when reviewing the discretionary aspects of sentencing is very narrow. We may reverse only if the sentencing court abused its discretion or committed an error of law. A sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. We must accord the sentencing court's decision great weight because it was in the best position to review the defendant's character, defiance or indifference, and the overall effect and nature of the crime.

*Commonwealth v. Nevels*, 203 A.3d 229, 247 (Pa. Super. 2019) (citation omitted).

- 4 -

In addition, statutory authority dictates:

In selecting from the alternatives set forth in subsection (a), the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. . . . In every case in which the court imposes a sentence for a felony or misdemeanor . . . the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed.

42 Pa.C.S.A. § 9721(b).

We have explained:

The court is not required to parrot the words of the Sentencing Code, stating every factor that must be considered under Section 9721(b), however, the record as a whole must reflect due consideration by the court of the statutory considerations at the time of sentencing. A sentencing court's indication that it has reviewed a pre-sentence report can satisfy the requirement of placing reasons for imposing sentence on the record. In addition, our Supreme Court has determined that where the trial court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed.

*Commonwealth v. Bullock*, 170 A.3d 1109, 1126 (Pa. Super. 2017)

(citations omitted).

Here, the trial court at sentencing stated:

This is a tragic situation. The victims in this case who had previously testified before the [court,] the impact of this incident on their lives is immeasurable. It is certainly something that they'll live with and have to live with for the rest of their lives.

[Appellant's counsel] has submitted a sentencing memorandum, [] which we have reviewed. We'd also note that he has advised the [c]ourt, and we don't question this, his client,

[Appellant], has only recently confirmed a diagnosis of multiple sclerosis. We're sorry to be advised of that.

The Commonwealth correctly points out that as much sympathy as there may be for [Appellant], that really can't undo the damage that's been done and there still has to be some accountability. . . .

We recognize that we've imposed a sentence here that may present some difficulties for [Appellant] in terms of his new diagnosis. We do recognize, though, that the state correctional system is equipped to handle some serious medical situations and they'll just have to adapt to [Appellant] to do the same.

N.T., 2/27/19, at 8-9.

The court subsequently explained:

At sentencing, [Appellant's counsel] summated [*sic*] the findings of Dr. Cary L. Twyman regarding the Appellant's multiple sclerosis diagnosis and of the Appellant's arguments from his [sentencing memorandum], which was docketed on February 25, 2019. [Counsel] indicated that the Appellant's medical situation is precarious, requiring medication in excess of $5,000 per month and constant monitoring for relapses. The Appellant then expressed his sorrow for his actions and his belief that his diagnosis with multiple sclerosis has given him an inkling of the victim's suffering.

\* \* \*

This [c]ourt took the plea and was present for the victim impact statements that occurred on that day and that were submitted in writing. This [c]ourt was in possession of a pre-sentence investigation that provided context for the crime, which included *inter alia* information regarding the Appellant's upbringing, his having been law-abiding, and his work ethic. This [c]ourt reviewed the Appellant's sentencing memorandum. This [c]ourt was present when the Appellant apologized to the victims[.] . . . The [c]ourt has no question as to the Appellant's remorse. It is quite evident in his brief remarks that he understands some portion of the [victims'] suffering. The Appellant has already begun the path towards rehabilitation; however, as noted in the pre-sentence investigation, he chose to

- 6 -

imbibe alcohol a week before his pre-sentence investigation interview. It is certainly not unlawful for a citizen to consume alcohol, but the Appellant's choice to do so following his plea, in a case of this nature, and without engaging in the intensive outpatient treatment recommended following his drug and alcohol evaluation, was slightly concerning vis-à-vis his rehabilitative needs absent incarceration. The protection of the public can be served by incarceration which arrests the downward spiral so many defendants succumb to. And we did not ignore [Counsel's] observation that the Appellant has never been in trouble before; however, all career criminals began with a first offense and the rehabilitative portion of sentencing aims to guide defendants back to the law-abiding path that they were once on.

. . . At sentencing, the Appellant did not present anyone from the Department of Corrections (hereinafter: DOC) to speak to the ability of the DOC to handle medical conditions such as the Appellant's. Rather, the Appellant presented Dr. Cary L. Twyman's letter and a final report indicating the dangers of the Appellant's disease and the need for fastidious monitoring of the Appellant's condition. Of note, Dr. Twyman's initial Outpatient Letter states the following: "I will be glad to assist the medical director of the institution for any further knowledge or intervention or questions that come up in the future." . . .

Nothing in the evidence adduced by the Appellant at or prior to sentencing indicates that the DOC is incapable of managing his condition. Dr. Twyman's submissions imply his belief that the DOC will have to be vigilant in their care for the Appellant. Moreover, due to the attenuated nature of appellate proceedings, the Appellant will have, of necessity, been afforded the few more months of exposure to the experimental drug, which Dr. Twyman believes would raise confidence in the Appellant's treatment. Thus, the harm to be avoided is, perhaps, evanescent. We would also note that it is the belief of this [c]ourt that the DOC has the ability to apprise this Court of their inability to care for the Appellant's needs, or to bear the costs of his medication, and to file appropriate motions should they deem it necessary.

Finally, as we stated at sentencing, the Appellant's sentences on the lead charges are to run concurrent with one another. Of note, this diverges from the recommendation made by the York County Probation Department in their pre-sentence investigation, which militated for the [18] to [36] months on each

charge that this [c]ourt imposed, but called for them to run consecutively with one another. . . . As previously explained, sympathy for the Appellant's medical plight could not completely override the other sentencing concerns this [c]ourt is called upon to address[.] . . .

The Appellant received standard range sentences on the lead charges and will be permitted to serve them concurrently in spite of the *horrific* nature of the harm he caused to the victims. Viewed in conjunction with Dr. Twyman's letters, we believe that the Appellant received sentences that accounted for his medical condition and strove to balance this concern against all of the other worthy concerns of a sentencing judge. We believe the record is replete with evidence regarding the relevant statutory concerns and that our sentencing order evidences due consideration of those concerns. The Appellant's rehabilitative needs were balanced against the protective needs of society and the impact on the victim and society at large. . . .

Trial Court Opinion, 11/8/19, at 5-13 (citations omitted, italics in original).

Upon review of the record, and consistent with both the above law and excerpts from the trial court, we discern no merit to Appellant's contention that the court failed to properly consider Appellant's medical condition at sentencing. The court specifically acknowledged Appellant's diagnosis, correctly stating that the DOC "is equipped to handle some serious medical situations." N.T., 2/27/19, at 8-9; ***see also*** Trial Court Opinion, 11/8/19, at 12 ("Nothing in the evidence adduced by Appellant at or prior to sentencing indicates that the DOC is incapable of managing his condition."). The court's decision was clearly informed, as it observed that it had considered Appellant's sentencing memorandum, and "Dr. Cary L. Twyman's letter and a final report indicating the dangers of Appellant's disease and the need for fastidious monitoring of Appellant's condition." Trial Court Opinion, 11/8/19, at 11.

Accordingly, we discern no error where the sentencing court had the benefit of a pre-sentence investigation report,[3] addressed Appellant's medical diagnosis and the DOC's capabilities, and sentenced Appellant within the standard-range of the guidelines.

Appellant next argues, for the first time on appeal, that his attorney at sentencing was ineffective for failing to present information about the "State Correctional Facility's ability to care" for his medical needs. Appellant's Brief at 6. It is well-settled that "issues not raised in the lower court are waived and may not be raised for the first time on appeal." Pa.R.A.P. 302(a). The Commonwealth recognizes that Appellant's claim is premature because the trial court was not given the opportunity to address the issue. *See* Commonwealth Brief at 14-15. In addition to citing Rule 302(a), the Commonwealth states, "as a general rule, [Appellant] should wait to raise his claim of ineffective assistance of trial counsel until collateral review[.]" pursuant to Pa. R.A.P. 302(a). We agree.

We have explained:

> In **Commonwealth v. Grant**, 813 A.2d 726 ([Pa.] 2002), our Supreme Court announced a general rule providing a defendant "should wait to raise claims of ineffective assistance of trial counsel until collateral review" pursuant to the Post Conviction

---

[3] "Where the sentencing court imposed a standard-range sentence with the benefit of a pre-sentence report, we will not consider the sentence excessive." **Commonwealth v. Corley**, 31 A.3d 293, 298 (Pa. Super. 2011). "In those circumstances, we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." **Id.**

Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. ***Grant***, [813 A.2d] at 738. Nevertheless, in ***Commonwealth v. Bomar***, 826 A.2d 831 ([Pa.] 2003), *reargument denied*, July 17, 2003, *cert. denied*, ***Bomar v. Pennsylvania***, 540 U.S. 1115, 124 S.Ct. 1053 (2004), our Supreme Court recognized an exception to ***Grant*** and found that where ineffectiveness claims had been raised in the trial court, a hearing devoted to the question of ineffectiveness was held at which trial counsel testified, and the trial court ruled on the claims, a review of an ineffectiveness claim was permissible on direct appeal. ***See Bomar***, 826 A.2d at 853-854[.]

***Commonwealth v. Quel***, 27 A.3d 1033, 1036-37 (Pa. Super. 2011) (some citations omitted).

Appellant attempts to circumvent settled legal authority by asserting that his attorney was ineffective at sentencing, but because the same attorney filed Appellant's post-sentence motion, Appellant's ineffectiveness claim was not raised in the trial court. ***See*** Appellant's Brief at 32-33. This argument is unavailing, as the issue of counsel's effectiveness at sentencing was not raised with the trial court and is not properly before us in this direct appeal. If Appellant wishes to raise a claim of counsel's ineffectiveness, he may do so under the PCRA. 42 Pa.C.S.A. §§ 9541-46.

Judgment of sentence affirmed.

Judge Colins joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/5/2020</u>